UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

WORLDWIDE EQUIPMENT OF TN,
INC.,

      Plaintiff,

v.

UNITED STATES OF AMERICA,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)

Civil No. 14-108-ART

**MEMORANDUM OPINION
AND ORDER**

\*\*\*  \*\*\*  \*\*\*  \*\*\*

As anyone who does their own taxes knows, it is largely an exercise in checking boxes. In this case, Worldwide Equipment, a truck dealer, paid an excise tax on sales of severe duty trucks. *See* 26 U.S.C. § 4051(a)(1)–(2). Later, Worldwide sought refunds from the IRS on the theory that one of its truck models was specially designed for off-road use and so exempt from the tax. *See id.* § 7701(a)(48)(A). The IRS denied the claims, and Worldwide came to court. R. 1. The government, though, says that Worldwide failed to check all the boxes needed to bring this refund suit. And this time around, the government has the case law to prove it.

I.

As it turns out, a lot of money rides on whether a heavy truck is designed for highway use. Why? To finance the Federal Highway Trust Fund, Congress levied a twelve-percent excise tax on the "first retail sale" of a truck chassis or body weighing more than 33,000 pounds. *Id.* § 4051(a)(1)–(2). But because the tax was meant to pay for highway maintenance, Congress exempted "[o]ff-highway transportation vehicles." *Id.* § 7701(a)(48)(A). As a

result, retailers can avoid paying the tax on any truck exhibiting two features:  First, the truck must be "specially designed for the primary function" of carrying a load "other than over the public highway."  *Id*. § 7701(a)(48)(A)(i).  Second, "because of this special design," the truck's ability to carry a load on a "public highway" must be "substantially limited or impaired."  *Id*.

In 2008, the IRS began assessing and collecting the excise tax on sales of Worldwide's Severe Duty GU713 truck.  *See* R. 1 ¶ 1.  Worldwide believes that assessment was improper.  Worldwide insists that the Severe Duty GU713 was eligible for the "off-highway" exemption because, among other things, it (1) is too wide to be operated on a highway without a permit, (2) rests atop tires marked "NOT FOR HIGHWAY SERVICE," and (3) was built using upgraded, off-road components.   R. 81 at 9; *see also* R. 1 ¶ 12 (listing the GU713's specifications).   Armed with these arguments, Worldwide filed a series of administrative refund claims with the IRS.  *See, e.g.*, R. 1 ¶ 26.  All told, Worldwide sought to recover more than $4 million in excise taxes that it paid on 227 trucks.  *See* R. 72 at 16.  But the IRS denied Worldwide's refund claims, *see* R. 148-1, so Worldwide filed this lawsuit, *see* R. 1.[1]

During summary judgment briefing, the United States asked the Court to dismiss this action for lack of jurisdiction because Worldwide had not satisfied the statutory prerequisites for bringing suit.  *See* R. 75-2 at 22–27.  Congress places strict limits on the waiver of sovereign immunity in tax cases: a taxpayer may not "maintain[] in any court" a suit to recover a tax refund from the IRS unless he first "duly filed [a claim for refund] with the Secretary, according to the provisions of law in that regard."  26 U.S.C. § 7422(a); *see also McDonnell*

---

[1]  Worldwide and its affiliates actually filed four separate lawsuits challenging the IRS's denials of several different refund claims.   The Court consolidated the four suits into this one action.  *See* R. 18; R. 25.

*v. United States*, 180 F.3d 721, 722 (6th Cir. 1999) (noting that the "Secretary" is the Treasury Secretary, who oversees the IRS). And here, the United States argued, Worldwide failed to comply with one such provision of law. *See* R. 75-2 at 27. That is, Worldwide never "filed with the [IRS] the written consent" of the ultimate purchasers of its trucks to "the making of the refund." 26 U.S.C. § 6416(a)(1)(D). A task that, according to the government, Worldwide had to complete while its claims were pending before the IRS. *See* R. 75-2 at 24.

The Court disagreed and denied the motion. *See* R. 108. The government had not identified any controlling precedent interpreting Section 6416(a) as requiring a taxpayer to file written consents at the administrative level prior to bringing suit. *See id.* at 6. And the plain language of that statute seemed to make the consents a prerequisite to Worldwide's receipt of a refund payment, but not to the filing of its refund claims or this lawsuit. *See id.* at 4–6.

During the final pretrial conference, however, the United States informed the Court that it had recently identified controlling precedent bearing on the question. *See* R. 145 at 4–5. Based on the United States' new cases, the parties agreed to brief the matter anew, which they have now done. See R. 147; R. 148; R. 151; R. 152. As a result, the question whether Worldwide's refund claims are properly before this Court is once again ripe for consideration.

## II.

When it comes to excise taxes, a retailer like Worldwide often acts only as a pass-through. It collects the tax from customers with each sale of the taxed item and remits it to the IRS; its own money is never really on the line. Understandably, the government is not too keen on allowing retailers to recover twice on the same tax—once from the customer (in the form of the purchase price) and again from the IRS (in the form of a tax refund). To ensure that a retailer does not come back later, hands out, asking to take back money that was never

truly his, Congress enacted Section 6416(a).  That provision says that the IRS may not "allow[] or ma[k]e" a refund of excise taxes "unless the person who paid the tax establishes, under regulations prescribed by the Secretary," that he either did not charge his customer for the tax or has since repaid him for it.  26 U.S.C. § 6416(a)(1)(A)–(B).  Or, as a final alternative, the retailer may show that the customer has consented in writing to "the making of the refund"— provided the retailer "has filed" the written consents with the IRS.  *Id.* § 6416(a)(1)(D).

Here, only the final option is on the table.  Worldwide admits that it never filed any written consents "with the Secretary" while the IRS's administrative review was underway.  *See* R. 147-2 at 3.  Indeed, it conceded the point in response to two requests for admission, and has not contested those admissions since.  *See* Fed. R. Civ. P. 36(b).  But Worldwide says it will produce the consents at trial to prove its entitlement to the refunds.  And that, it says, is all that Section 6416(a) requires.  *See* R. 148 at 4–6.  The government disagrees, and now cites two cases in response: *United States v. Jefferson Electric Manufacturing Co.*, 291 U.S. 386 (1934), and *United States v. Standard Oil Co.*, 158 F.2d 126 (6th Cir. 1946).  R. 147 at 6–9.

## A.

*Jefferson Electric* and *Standard Oil* each dealt not with Section 6416(a), but with one of its predecessors.  These earlier versions of the "unjust enrichment" rule were not, however, materially different from the present one.  All three required a refund claimant to prove that he was not double-dipping courtesy of the internal revenue.  *Travel Indus. of Kan., Inc. v. United States*, 425 F.2d 1297, 1298–99 (10th Cir. 1970).  All three allowed him to do so by showing that he had not passed along the cost of the excise tax to his customers.  *Compare* Revenue

Act of 1928 § 424(a),[2] *and* Revenue Act of 1932 § 621(d),[3] *with* 26 U.S.C. § 6416(a)(1).  And Sections 621(d) and 6416(a) both permitted the claimant to opt instead to file written proof with the IRS that his customers had consented to the claimant seeking the refund.  *See* 26 U.S.C. § 6416(a)(1)(D); *Andrew Jergens Co. v. Conner*, 125 F.2d 686, 687–88 (6th Cir. 1942) (quoting § 621(d)).

Weighing the significance of these provisions, the Supreme Court and Sixth Circuit each had two things to say.  First, these statutory requirements imposed a substantive limitation on a taxpayer's "right to a refund."  *Jefferson Elec.*, 291 U.S. at 395.  They did so by prescribing an "additional substantive element" that the taxpayer had to prove in order to recover on his claim: namely, that he had not shifted the burden of the excise tax to another. *Id.* at 397; *see also Standard Oil*, 158 F.2d at 128 ("The effect of this requirement was to add a new element in the right to refund, namely the non-shifting of the tax burden . . . .").  Without proof that he actually bore the cost of the excise tax, a taxpayer could not hope to recover it via a refund claim.  *Jefferson Elec.*, 291 U.S. at 397, 400; *Standard Oil*, 158 F.2d at 128–29.

Second, these sections added an element of timing in addition to substance.  To the Supreme Court, Section 424(a) required a taxpayer to "satisfactorily establish[]," both before the IRS and in any suit brought after it denied a claim, that he had not charged his customers for the tax.  *Jefferson Elec.*, 291 U.S. at 395.  For its part, the Sixth Circuit was unequivocal. Section 621(d) required the taxpayer to "assert[] and prove[] as an element of [his] claim . . . , *both in the proceeding before the Commissioner* and subsequently in the district court," that he had not shifted the burden of the tax.  *Standard Oil*, 158 F.2d at 128 (emphasis added).

---

[2]  Quoted at *Jefferson Electric*, 291 U.S. at 391–92.
[3]  Quoted at *Andrew Jergens Co. v. Conner*, 125 F.2d 686, 687–88 (6th Cir. 1942).

B.

Viewed anew in the light of these cases, there is no question that Worldwide has not complied with Section 6416(a) or the regulations implementing it. As discussed, Worldwide admits that it never filed written consents with the IRS while its refund claims were pending before the agency. *See* R. 147-2 at 3. And, as the government points out, that omission ran afoul of not just Section 6416(a) but also Treasury regulations. *See* R. 147 at 5. Under 26 C.F.R. § 301.6402-2(a)(2), Worldwide was required to file "supporting evidence" alongside its "Form 8849 Claim for Refund of Excise Taxes." And per Section 301.6402-2(b)(1), Worldwide had to state in its claim "facts sufficient to apprise the [IRS] of the exact basis" for the claim. Yet Worldwide did not attach consents to its claims. *See* R. 147-2 at 3. Nor did it include in those claims any information about the availability of those consents. *See, e.g.*, R. 75-43. This despite the fact that the consents, and by extension, proof that Worldwide had satisfied Section 6416(a)(1), was an essential element of the company's claims. An element that Worldwide was obligated to establish before the IRS. *See Standard Oil*, 158 F.2d at 128–29.

C.

Why, though, does all this matter? Worldwide says it can produce the consents at trial. So the Court would still be able to determine, before ordering any refund payment, whether Worldwide's customers have consented to it. Perhaps, then, this is a case of no harm, no foul.

Unfortunately for Worldwide, the law is not quite so forgiving. Worldwide's failure to comply with 26 U.S.C. § 6416(a) and 26 C.F.R. § 301.6402-2 presents a problem of jurisdiction. The reason being that the United States is immune from suit except to the extent it consents to be sued. *United States v. Testan*, 424 U.S. 392, 399 (1976). As a result, the

conditions that Congress imposes on any waiver of sovereign immunity "define the court's jurisdiction" to hear a case against the federal government or one of its component parts. *Id.* (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1981)).

In this case, Congress waived the United States' immunity from suits seeking tax refunds, but only in part. Congress provided that a taxpayer may sue for a tax refund only if he first "duly filed" a refund claim "with the [IRS], according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." 26 U.S.C. § 7422(a). Here, though, Worldwide's administrative refund claims did not comply with one such "provision[] or law" or another "regulation[] . . . established in pursuance thereof." Worldwide's claims therefore might have been timely, but they were not "sufficient" to invoke the Court's jurisdiction under Section 7422(a). *See Thomas v. United States*, 166 F.3d 825, 828–31 (6th Cir. 1999); *West v. United States*, 397 F.2d 381, 382–83 (7th Cir. 1968); *cf. United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4 (2008) ("The Internal Revenue Code specifies that . . . [a] taxpayer must comply with the tax refund scheme established in the Code" before bringing *any* suit "seeking a refund of taxes erroneously or unlawfully assessed.").

Indeed, this is the very outcome dictated by *Standard Oil*. As the Sixth Circuit noted, Standard Oil's refund claim had not included any "claim or showing" that the company had shouldered the economic burden of the excise tax. 158 F.2d at 129. Nor had Standard Oil attached to its claim a sworn statement affirming that it had complied with Section 621(d)— as a Treasury Regulation required it to do. *See id.* at 127–28 (citing Treasury Regulations, 44 (1934 Ed.) Article 84). These errors, the Sixth Circuit reasoned, meant that Standard Oil had not met its burden to plead and prove an essential element of its claim while that claim was under administrative review. *See id.* at 128–29. And because it had not "[m]eticulous[ly]

compli[ed]" with the conditions necessary to sue for a refund, Standard Oil's refund claims were "insufficient to furnish the essential lawful basis for its court action."  *Id.* at 129–30.[4]

This outcome also makes sense as a matter of logic, not just precedent.  Section 7422(a) does more than just protect the United States' sovereign immunity.  Congress has also decided that the agency administering the federal tax code should be permitted the first pass at resolving refund claims.  After all, the IRS has the experience and bureaucratic bandwidth necessary to sort wheat from chaff across the vast number of refund claims filed each year.  Meanwhile, the federal courts stand by, ready to resolve the most contentious refund claims.

If taxpayers were able to skip ahead to court without first presenting a complete claim to the IRS, then the purpose of this dual-review system would be undermined.  The IRS would have no meaningful opportunity to pass on the essential elements of the taxpayer's claim.  Yet, that is precisely what Worldwide attempts to do here.   Proof that Worldwide did not pass along the cost of the tax (or has obtained consents) is an essential element of its claim for a refund of excise taxes.  *See Jefferson Elec.*, 291 U.S. at 397; *Standard Oil*, 158 F.2d at 128.  Yet, Worldwide never provided any evidence bearing on that element—in this case, the written consents of the purchasers of its trucks—to the IRS.  *See* R. 147-2 at 3.  It simply asks that the

---

[4]  Having to prove that the taxpayer actually bore the economic burden of the tax is a way of ensuring the claimant who seeks a refund was actually injured by the unlawful assessment of the tax.  Not surprisingly, then, at least one court has thought of the issue as one of the taxpayer's standing to bring the refund suit.  *See United States v. Spokane Rodeo, Inc.*, 254 F.2d 377, 378–79 (9th Cir. 1958).  Still other courts have treated a failure to comply with Section 6416(a) as speaking to a taxpayer's inability to state a cause of action or to prove an element of his claim.  *See, e.g.*, *Collins v. United States*, 902 F.2d 1564, at *1 (4th Cir. 1990) (per curiam); *Etheridge v. United States*, 300 F.2d 906, 908 (D.C. Cir. 1962).  Indeed, *Standard Oil* might be read consistently with this latter line of cases—after all, the Sixth Circuit faulted the taxpayer there for failing "to claim and to establish an essential statutory element upon which its right to a refund was grounded." 158 F.2d at 128.  At the end of the day, though, any debate over the proper vehicle is academic in this case.  For whether it is Rules 12(b)(1), 12(b)(6), or 56, all roads lead to the same place.  Because Worldwide did not file written consents with the IRS while its claims were pending before the agency, Worldwide cannot maintain this action consistently with Section 7422(a), *Standard Oil*, or the Sixth Circuit's decision in *Thomas*.

8

Court allow it to produce that evidence for the first time at trial. *See* R. 148 at 6. But that is an option that neither Section 7422(a) nor *Standard Oil* permits. *See* 158 F.2d at 129–30; *see also West*, 397 F.2d at 383 ("By failing to submit a claim in accordance with the statute and the reasonable regulations implementing it, the plaintiff has denied the Commissioner of Internal Revenue an opportunity to pass on his claim, thus defeating the object of 7422(a).").

III.

Worldwide is not without responses. For starters, it insists that there is no statutory or regulatory requirement that taxpayers provide written consents at the administrative level. R. 152 at 3. Of course, that is simply a restatement of the position the Court just rejected. Viewed as they must be in light of *Standard Oil*, 26 U.S.C. § 6416(a)(1)(D) and 26 C.F.R. § 301.6402-2 both obligated Worldwide to file its customers' consents with the IRS while its refund claims were pending before the agency. *See Standard Oil*, 158 F.2d at 128–29.

Alternatively, Worldwide argues that the IRS waived the consents requirement when it denied the company's claims on the merits rather than for failure to comply with Section 6416(a). R. 148 at 7–8; R. 152 at 4–5. Worldwide is correct that the IRS can waive strict compliance with its own regulations. *See, e.g.*, *United States v. E.L. Bruce Co.*, 180 F.2d 846, 849–50 (6th Cir. 1950). The idea being that if the IRS is willing to overlook a defect in a refund claim and consider the claim on the merits, then courts should do the same. *See Angelus Milling Co. v. C.I.R.*, 325 U.S. 293, 297 (1945). So if the only technical defect in Worldwide's claims were the company's failure to comply with Section 301.6402-2, then it might have had a waiver argument. *See, e.g.*, *Goulding v. United States*, 929 F.2d 329, 331–33 (7th Cir. 1991).

But waiver cannot save Worldwide here. Yes, Worldwide's claims were deficient under a Treasury regulation. But what violates a regulation might also violate a statute. *See,*

9

*e.g.*, *United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269, 271–72 (1931).  In this case, 26 U.S.C. § 6416(a)(1)(D) imposed an independent statutory duty on Worldwide to file written consents "with the Secretary."  According to Section 7422(a) and *Standard Oil*, Worldwide was required to do so while its claims were pending before the IRS.  *See* 158 F.2d at 128–29.  And importantly, Worldwide has cited no authority suggesting the IRS has power to waive compliance with this statutory prerequisite.  For good reason:  The IRS has no power to waive this congressionally mandated requirement.  *See United States v. Garbutt Oil Co.*, 302 U.S. 528, 533 (1938) ("The [waiver] argument confuses the power of the Commissioner to disregard a statutory mandate with his undoubted power to waive the requirements of the Treasury Regulations."); *Utility Appliance Corp. v. C.I.R.*, 256 F.2d 39, 45 (9th Cir. 1958) ("[T]he Commissioner is powerless to waive the substantive requirements of the statute.").

As a final stand, Worldwide says that it believed that it did not need to file the consents with the IRS because, before it could do so, the agency informed the company that it would likely deny its claims.  *See* R. 148 at 7–8; R. 152 at 4–5.  But there are two problems with this argument.  First, an IRS agent asked Worldwide to submit consents in January 2012—six months before the agency denied the first round of claims.  *See* R. 147-4 (Jan. 13, 2012 fax); R. 148-1 at 2–18 (July 2012 disallowance letters).  And the "Form 4564 Information Document Request" the agent sent was explicit:  "There must be a consent for each customer/vehicle included in your claims."  R. 147-4 at 2.  So Worldwide was on notice that the consents were essential to its claims long before they were denied.  *See* R. 79 at 9 (Deposition of James R. Polk at 30–31); R. 152-1 at 2 (Affidavit of James R. Polk).  Second, anticipating that the IRS will deny a refund claim is not grounds for failing to submit a sufficient claim to the agency.  *See Felt & Tarrant Mfg.*, 283 U.S. at 273 ("The necessity for filing a claim such as the statute

requires is not dispensed with because the claim may be rejected. . . .  An anticipated rejection of the claim, which the statute contemplates, is not a ground for suspending its operation[.]").

IV.

There is one box Worldwide never checked.  Yes, it filed claims with the IRS seeking refunds of the excise taxes it had paid on sales of its Severe Duty GU713 trucks.  But Worldwide never established, while its claims were pending before the agency, that its customers had consented to those refunds.  *See* 26 U.S.C. § 6416(a)(1)(D); *Standard Oil*, 158 F.2d at 128–29.  As a result, Worldwide cannot maintain this refund action now.  *See* 26 U.S.C. § 7422(a); *Standard Oil*, 158 F.2d at 130.  The Court will therefore grant the United States' renewed motion to dismiss.

Accordingly, it is **ORDERED** as follows:

(1)     The United States' renewed motion to dismiss, R. 147, is **GRANTED**.

(2)     Worldwide's complaints in the four consolidated cases are **DISMISSED**.

(3)     This action is **STRICKEN** from the Court's active docket.

(4)     All other pending motions are **DENIED AS MOOT**, and all scheduled hearings are **CANCELLED**.

(5)     A separate judgment will issue.

This the 12th day of December, 2016.



**Signed By:**

*Amul R. Thapar*

**United States District Judge**